UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:

Jay Scott Lerner,                                        Case No.: 13-75273-ast
                                                         Chapter 7
                         Debtor.
---------------------------------------------------------x

## DECISION AND ORDER DENYING MOTION OF
## BINDER & BINDER, P.C. TO REOPEN DEBTOR'S CASE

*Issue Pending and Summary of Ruling*

Prior to filing for bankruptcy relief, the debtor, Jay Scott Lerner ("Debtor" or "Mr.

Lerner") suffered from a debilitating illness.  He hired Binder & Binder, P.C. ("B&B") to pursue

claims that he was permanently disabled before the Social Security Administration (the "SSA").

After his disability claims were granted, the SSA inadvertently paid $6,000.00 to Debtor instead

of paying that money to B&B as B&B's legal fee for pursuing his disability claims.  Debtor

received his bankruptcy discharge and this case was closed.  However, B&B now asks this Court

to exercise its discretion to reopen this bankruptcy case so that it can file a frivolous non-

dischargeability complaint against Debtor.[1]  B&B alleges Debtor embezzled the $6,000.00 that

was inadvertently paid to him by the SSA.  For the reasons to follow, the Court concludes that

this case should not be reopened for any reason, including for the consideration of sanctions

against B&B.

*Jurisdiction*

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C.

§§ 157(b)(2)(A) and (O), 1334(b), and the Standing Order of Reference in effect in the Eastern

---
[1] Motion to Reopen Chapter 7 Case filed May 2, 2014 (the "Motion"). [dkt item 11]

District of New York dated August 28, 1986 and as amended on December 5, 2012, but made

effective *nunc pro tunc* as of June 23, 2011.  The following constitutes the Court's findings of

fact and conclusions of law made in accordance with Rule 7052 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") to the extent required.  FED R. BANKR. P. 7052.

*Background*

*Debtor's pre-bankruptcy events and bankruptcy case*

Prior to the filing of his bankruptcy case, Mr. Lerner was diagnosed and treated for a

severe illness.  Events in Mr. Lerner's life caused him to suffer symptoms of what his medical

professionals and B&B considered to cause a permanent inability to obtain and hold gainful

employment.  Debtor retained the services of B&B to prosecute and/or advocate his permanent

disability claim before the SSA.

In June 2012, Debtor executed a fee agreement with B&B for representation before the

SSA (the "Fee Agreement").  The Fee Agreement provided that the fees due and owing B&B

were contingent in nature, and depended upon the successful outcome of his claim against the

SSA.  Specifically, the fees were to be the lesser of:

> a. twenty-five percent (25%) of the past due benefits; or
> b. the maximum amount set by the Commissioner of the SSA pursuant to 42
> U.S.C. § 406(a).

Motion, Ex. 3, public access restricted. This maximum allowable amount was $6,000.00 for

cases adjudicated subsequent to June 29, 2012.  The term "past-due benefits" was defined in the

Fee Agreement to "include all benefits payable to claimants and/or their families/dependents."

On October 17, 2013, while his claim was pending before the SSA, Debtor filed for

chapter 7 relief with the assistance of bankruptcy counsel.  Debtor listed B&B as a disputed

creditor, but, according to B&B, used an old address for it.  In October 2013, the Clerk's office

mailed notice of the commencement of the case, advising parties, *inter alia*, that the § 341[2]

meeting of creditors was scheduled for November 26, 2013, and the deadline to file a complaint

objecting to Debtor's discharge or the dischargeability of certain debts was set as January 27,

2014; this notice was served upon Debtor, the Trustee, all scheduled creditors, and all parties in

interest, including B&B at the address listed by Debtor.  [dkt item 6]  Because Debtor's case was

filed as a "no asset" case, creditors were also notified by the Clerk's Office not to file claims

unless subsequently advised to do so[3].  [dkt item 5]  B&B claims it did not know of these

deadlines or of the no asset notice until after this case was closed.

In his Schedules, Debtor listed as assets his house, and certain personal property worth

less than $10,000.  He listed various liabilities, including a mortgage against his house.  On his

Schedule I, he listed his occupation as "disabled," his income as $2,000 per month of disability

income, and included his non-filing spouse's income of $866.67 per month, as well as $1,000 per

month of disability income for his dependent son.  Per his Schedule J, Debtor's household

expenses exceeded his income by $647.31 per month.

Debtor received his discharge on January 29, 2014, and his case was closed that same

day.

Debtor subsequently obtained a favorable determination in his SSA action, and on or

about April 12, 2014 received a notification from the SSA stating, "[y]our past-due Social

---

[2] Unless otherwise indicated, all statutory references are to title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

[3] "Rule 2002(e) allows the clerk to issue what has become known as the 'no asset' notice. In a chapter 7 case when there appear to be no distributable assets, the notice of the meeting of creditors may contain a statement to that effect. Creditors are requested not to file proofs of claim and are informed that, should assets later become available, notice of such assets and notice of the bar date for filing proofs of claim will be mailed." *In re Warmbrand*, 2013 Bankr. LEXIS 4786, at *4, n.2, (Bankr. E.D.N.Y. Oct. 17, 2013) (quoting 8 COLLIER ON BANKRUPTCY P. 2002.06 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)); FED. R. BANKR. P. 2002(e).

Security benefits are \$36,080.00 for April 2011 through September 2012." (the "SSA

Notification").  The SSA Notification went on to state:

> We have approved the fee agreement between your and your lawyer.
>
> ...Because of the law, we usually withhold 25 percent of the total past-due benefits or the maximum payable under the fee agreement to pay an approved lawyer's fee. We withheld \$6,000.00 from your past-due benefits. Because of the law, we usually withhold 25 percent of total past-due benefits or the maximum payable under the fee agreement to pay an approved lawyer's/representative's fee. We base the amount of the fee the lawyer/representative can charge on the total past-due benefits.
>
> **We inadvertently released all past-due benefits to you; therefore the lawyer/representative will contact you for the payment of the approved fee of \$6000.00. If you do not pay the lawyer/representative this approved fee, he can contact us for payment. We will proceed to withhold benefits from you to the extent of the approved fee or the amount that should have been witheld[sic], whichever is smaller.**

Motion, para. 8 (emphasis added); Motion, Ex. 4, public access restricted.

### *B&B's motion to reopen*

On May 2, 2014 B&B filed its Motion.  B&B argues that because it lacked notice or

actual knowledge of Debtor's case due to use of a "bad address" by Debtor,  B&B's debt is

nondischargeable under § 523(a)(3)(B), because it holds a nondischargeable embezzlement claim

under § 523(a)(4).  According to B&B, Debtor used an address that Debtor should have known

was incorrect, because Debtor had interviewed with B&B and executed the Fee Agreement at a

different location, and B&B has not operated from the listed address in the last fifteen years.

B&B contends that it was only advised of Debtor's discharge in April 2014, when it received a

letter from Debtor's counsel regarding Debtor's response to B&B's demand for payment of the

\$6,000.00.  Attached to the Motion is the demand letter dated April 18, 2014 from B&B to

Debtor that states:

> We recently received a letter from the [SSA] indicating all or part of your authorized fee was released to you in error….Therefore, I would appreciate it if you could send us the $6,000.00 that was released to you in error….As you know, when you first retained us, we advised you that the government would pay us directly through your back due benefits, however, occasionally errors like this do occur.

Motion, Ex. 2.

Armed with the knowledge that the SSA had **inadvertently** released B&B's claimed legal fee of $6,000.00 to Debtor, and with no factual basis to believe that Debtor knew he had received funds that he was not entitled to, B&B inexplicably argues that this case should be reopened so that it can commence an adversary proceeding claiming its disabled former client embezzled the $6,000.00. B&B essentially seeks to convert a potential breach of contract claim against Debtor under the Fee Agreement (failure to pay the $6,000.00 contingency) into a non-dischargeable debt.

B&B scheduled the Motion for a hearing on July 1, 2014.

By letter dated May 5, 2014 Debtor's bankruptcy counsel filed a letter stating that Debtor "will represent himself regarding the recent motion to reopen his bankruptcy" and that "my office did not receive any return mail notices indicating that the Binder and Binder address, used in the petition, was outdated." [dkt item 12]

On July 1, Debtor appeared for the hearing, visibly shaken and distraught. He brought with him a handwritten but undated letter terminating B&B from representing him and a letter of a medical professional dated June 26, 2014 stating that at no time was B&B ever in contact with this medical provider. The Court had the two letters docketed in redacted form to protect Debtor's medical privacy. [dkt item 13] Debtor further contended that he prosecuted his disability claim before the SSA in its entirety without B&B's assistance.

At the hearing, the Court questioned B&B as to a legal theory that might possibly support

a colorable claim under § 523(a)(2), (4) and/or (6) of the Bankruptcy Code.  As it had in the

Motion, B&B asserted "embezzlement."  B&B also advised the Court that it had filed a federal

court lawsuit against the SSA seeking to recover the $6,000.00, and advised that often the SSA

may seek to recoup an inadvertent payment from future payments owing to a debtor.

The Court also asked B&B about the termination issue, and directed it to file papers

related to Debtor's belief that B&B had been terminated before the SSA award was made.  On

July 16, 2014 B&B filed an affidavit of a B&B non-attorney employee, who stated that "BB's

records do not reflect that [Debtor] ever terminated or discharged BB…."  [dkt item 14]  B&B

then listed actions it believed it had taken in aiding Debtor in receiving his disability award, the

last of which is listed as having been undertaken on October 26, 2012.  B&B also updated this

Court on the status of its federal district court action against the SSA.  In response, on July 18,

2014 Debtor filed a handwritten letter in which he repeated the allegations made at the July 1

hearing – that he had fired B&B and had represented himself before the SSA.  [dkt item 15]

*Analysis*

Section 350(b) of the Bankruptcy Code authorizes courts to reopen a case "to administer

assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b).  This Court has

previously articulated that "[t]he statute's permissive language provides the Court with broad

discretion to determine whether a debtor filed a motion to reopen in good faith or has

demonstrated good cause."  *In re Warmbrand*, 2013 Bankr. LEXIS 4786, at *11 (Bankr.

E.D.N.Y. Oct. 17, 2013); *In re Meneses*, 2010 Bankr. LEXIS 700 at *7 (Bankr. E.D.N.Y. Mar. 3,

2010); *see Smith et al. v. Silverman et al. (In re Smith),* 645 F.3d. 186, 189 (2d Cir. 2011).  A

case may be reopened on the request of parties in interest other than the debtor.  FED. R. BANKR.

P. 5010.

The decision to reopen a case "invoke[s] the exercise of a bankruptcy court's equitable

powers, which is dependent upon the facts and circumstances of each case." *In re I. Appel*

*Corp.*, 104 Fed. App'x. 199, 200 (2d Cir. 2004); *In re Chalasani*, 92 F.3d 1300, 1307 (2d Cir.

1996).  This Court will limit the exercise of its discretion to reopen a closed case "in

circumstances where relief may ultimately be afforded to a party, but not where reopening is

futile or a waste of judicial resources." *In re Farley*, 451 B.R. 235, 237 (Bankr. E.D.N.Y. 2011).

The moving party carries the burden of proof in establishing cause to reopen.  *In re Warmbrand*,

2013 Bankr. LEXIS 4786, at *12.

Here, B&B seeks to reopen Debtor's bankruptcy case so that it can obtain a judgment

declaring its debt nondischargeable under § 523(a)(3).[4]  Because this case was a "no asset" case,

B&B was not required to file a proof of claim — to do so would be pointless as no assets were

available for distribution.  *See* FED. R. BANKR. P. 2002(e), 3002(c)(5); *In re Garland*, 501 B.R.

195, 199 (Bankr. S.D.N.Y. 2013).  B&B must therefore prove that it holds a debt which should

---

[4] Section 523(a)(3) states that a debt that satisfies the following criteria may be excepted from a debtor's discharge:

> (3) [a debt that was] neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
>
>> (A) if such debt  is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
>>
>> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;

11 U.S.C. § 523(a)(3).

not be discharged under § 523(a)(2), (4), or (6), and that B&B lacked notice or actual knowledge

of Debtor's case in time to file a timely complaint to have its debt declared nondischargeable.

Because the adversary proceeding outlined by B&B would be frivolous, this Court has

determined that reopening would be futile and a waste of judicial resources.   The Court will,

however, first analyze whether B&B was properly scheduled and whether it had notice or

knowledge of the § 523 objection deadline.

### *The Bad Address*

A debtor must exercise reasonable diligence under the particular circumstances of the

case in preparing his or her schedules.  *Lefkowitz v. Najjar (In re Najjar)*, 2007 Bankr. LEXIS

1678, at *8 (Bankr. S.D.N.Y. May 11, 2007).  However, in scheduling a known creditor, a debtor

is only required to review his or her own books and records in ascertaining that creditor's current

address.  *See In re Brooklyn Hosp. Ctr. & Caledonian Health Ctr.*, 2014 Bankr. LEXIS 3406, at

*18 (Bankr. E.D.N.Y. Aug. 8, 2014).  Absent any evidence from Debtor that he in fact reviewed

his records of communications with B&B or was otherwise diligent when scheduling B&B, the

Court accepts B&B's contentions that it was not properly listed in Debtor's petition.

### *B&B's Lack of Notice or Knowledge*

Similarly, this Court accepts B&B's contention that it lacked notice or actual knowledge

of Debtor's bankruptcy case until April 2014, several months after the time to file an objection to

dischargeability had run[5].  The burden of proof rests with the debtor to show that the creditor had

notice or actual knowledge of the case.  *U.S. Small Bus. Admin v. Bridges,* 894 F.2d 108, 111

(5th Cir. 1990); *see Massa v. Addona (In re Massa)*, 187 F.3d 292, 296 (2d Cir. 1999).  Courts in

---

[5] Pursuant to Bankruptcy Rule 4007(c), objections to the dischargeability of debts under § 523 must be filed not later than 60 days following the first date set for the meeting of creditors under § 341.  See FED. R. BANKR. P. 4007(c).  Here, that deadline ran on January 27, 2014.

the Second Circuit are instructed to look "to the totality of the circumstances" in determining

whether a creditor was afforded adequate notice or had actual knowledge of the proceeding.

*Massa*, 187 F.3d at 297.  While Debtor's counsel contends that he did not receive any returned

mail, he was not specific as to any mail counsel sent to B&B regarding this case prior to

discharge.  Accordingly, the Court finds that under the totality of the circumstances B&B has

demonstrated that it lacked notice of the case in time to file a timely complaint under § 523(a)(2),

(4), or (6).

### *The Proposed Frivolous Adversary Proceeding*

The remaining issue is whether B&B can assert a viable § 523(a) claim.  As stated above,

B&B alleges that its debt for unpaid legal fees should be excepted from discharge under

§ 523(a)(4) due to embezzlement.  B&B asserts that its claim for embezzlement may be broken

into five elements: (1) entrustment to the debtor of (2) property (3) of another (4) which the

debtor appropriates for his or her own use (5) with intent to defraud, citing *Garland*, 501 B.R. at

199.  B&B further states that "embezzlement is 'the fraudulent appropriation of property by a

person to whom such property has been entrusted or into whose hands it has lawfully come,'"

citing *In re Robbins*, 2007 Bankr. LEXIS 1419, at *30 (Bankr. E.D. Tenn. 2007).  For purposes

of this decision, this Court accepts B&B's statement of the law.

Where B&B irretrievably departs from any colorable claim[6], is when it then argues how it

can meet its burden of proof under § 523(a).  B&B states:

Herein, the Debtor is liable for embezzlement as demonstrated below:

a. there was an entrustment;

---

[6] In *Garland*, the court noted that "[c]ourts are divided as to whether the claimant must prove that it would have ultimately prevailed in the underlying causes of action, or whether the claimant need only show a colorable claim 'of the kind' that section 523(a)(3) contemplates."  501 B.R. at 201 (citing cases).  Here, the Court need not choose which view to adopt, as B&B has failed to carry its burden on either front.

b. the $6,000 was property;
c. which legally belonged to BB;
d. which the Debtor has appropriated for his own use; and
e. with the intent to defraud. The latter is evidenced by: (i) the refusal of the Debtor to turn over the ill-gotten $6,000 to BB upon requests by both the SSA and BB, (ii) the intentional use of a bad address for BB in his bankruptcy matrix of creditors, (iii) the intentional disclosure of the BB claim as "disputed" notwithstanding that the SSA lawfully awarded the fee to BB; (iv) the intentional failure to disclose the proper amount of the fee awarded to BB; and (v) the Debtor's attempt to hide behind the mask of the bankruptcy discharge when confronted with the return of the moneys.

Motion, para. 14.

These assertions lack a good faith basis.  B&B openly acknowledged that the SSA had

inadvertently paid the $6,000.00 to Debtor.  B&B itself wrote Debtor a letter on April 18, 2014

stating that it was aware of the "error" made by the SSA in sending Debtor the $6,000.00, and

asking Debtor to "send us the $6,000.00 that was released to you in error."  B&B acknowledged

in its letter that "occasionally errors like this do occur."

B&B also provided this Court with the SSA's letter to Debtor which states:

Your past-due Social Security benefits are $36,080.00 for April 2011 through September 2012. Because of the law, we usually withhold 25 percent of the total past-due benefits or the maximum payable under the fee agreement to pay an approved lawyer's fee. We withheld $6,000.00 from your past-due benefit to pay the lawyer.

Motion, para. 4, Ex. 4, public access restricted.  This SSA letter confirms that the SSA

inadvertently released the $6,000.00 to Debtor.  There is simply no good faith basis upon which

B&B can argue that Debtor embezzled money that both the SSA and B&B acknowledged was

sent to Debtor in error.

Moreover, there simply was no entrustment; there is no evidence or even any suggestion

that the SSA advised Debtor when it sent the $6,000.00 that such money was sent to him to hold

for the benefit of B&B or to turn over to B&B.  The proper inference to be drawn from the

evidence before the Court is that the $6,000.00 was included with the remainder of Debtor's

past-due benefits and not sent separately to him; thus, there is no evidence that Debtor knew he

received B&B's legal fee.  Further, there is no specification as to how and when Debtor formed

an intent to deceive or defraud the attorneys he believed he had terminated.

The SSA made an error; pure and simple.  Debtor, an honest but unfortunate debtor, filed

for bankruptcy protection, and has earned and received his discharge.  "[A] central purpose of the

[Bankruptcy] Code is to allow the honest but unfortunate debtor to reorder [his] affairs, make

peace with [his] creditors, and enjoy a new opportunity in life with a clear field for future effort,

unhampered by the pressure and discouragement of preexisting debt."  *Kran v. Kran*, 2014 U.S.

App. LEXIS 14222, at *8 (2d Cir. July 25, 2014) (quoting *Grogan v. Garner*, 498 U.S. 279,

286-87 (1991)) (internal quotations omitted) (alterations in original).  B&B had a debt, and it has

been discharged.  B&B has no basis to seek a determination of nondischargeability.  As such, it

also may not seek to collect this debt from Debtor directly or indirectly, through recoupment or

otherwise.

## *The Court Will Not Exercise Its Power to Sanction B&B*

Bankruptcy 9011(b) states in relevant part that an attorney's signature on a pleading

certifies that the attorney, to the best of his or her knowledge, is raising legal contentions

warranted by existing law and that the factual contentions have evidentiary support.  *See* FED. R.

BANKR. P. 9011(b)(2)-(3).  Moreover, "[f]ederal courts, including bankruptcy courts, possess

inherent authority to impose sanctions against attorneys and their clients."  *MA Salazar, Inc. v.*

*Inc. Vill. of Atl. Beach*, 499 B.R. 268, 274 (E.D.N.Y. 2013) (quoting *In re Plumeri*, 434 B.R.

315, 327-328 (S.D.N.Y. 2010)); *see Desiderio v. Parikh (In re Parikh)*, 508 B.R. 572, 597

(Bankr. E.D.N.Y. 2014).  Under its inherent powers to supervise and control its own proceedings,

11

a bankruptcy court "may impose sanctions where: 1) the challenged claim was without a colorable basis and 2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay." *Dahiya v. Kramer*, 2014 U.S. Dist. Lexis 41425, at \*12 (E.D.N.Y. Mar. 27, 2014) (citing *Enmon v. Prospect Capital Corp.,* 675 F.3d 138, 143-44 (2d Cir. 2012)); *MA Salazar, Inc.*, 499 B.R. at 274. A claim may be characterized as "without a colorable basis" when it is devoid of legal or factual support. *Schlaifer Nance & Co., v. Estate of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999). Courts may infer that a claim was brought in bad faith if it is "so completely without merit as to require the conclusion that [it] must have been undertaken for some improper purpose such as delay." *MA Salazar, Inc.*, 499 B.R. at 274.

This Court has the discretion to *sua sponte* consider the issuance of sanctions under Bankruptcy Rule 9011 and its inherent authority. *See* FED. R. BANKR. P. 9011(c)(1)(B); *Baranek v. Baranek*, 2013 U.S. Dist. LEXIS, 129722, at \*26 (E.D.N.Y. Sept. 11, 2014) (affirming bankruptcy court's *sua sponte* award of sanctions under Bankruptcy Rule 9011); *MA Salazar, Inc.* 499 B.R. at 274 (directing the bankruptcy court to consider on remand whether it should have exercised its inherent authority to impose sanctions on its own initiative).

In conjunction with the filing of the Motion, B&B filed an action in district court to recoup the funds from the SSA; B&B has experience with such proceedings. In a similar case, *Binder & Binder, P.C. v. Astrue*, 848 F. Supp. 2d 230 (E.D.N.Y. 2012), the court awarded B&B summary judgment on its claim for recoupment from the SSA of fees B&B was awarded, even though the underlying fee obligation was ostensibly discharged through the debtor's chapter 7 case. In *Astrue*, B&B represented a client who, like the Debtor here, erroneously received a sum of money which should have been paid directly to B&B as its legal fee. Similarly, B&B's client in *Astrue* also filed a chapter 7 case, incorrectly scheduled B&B, and received a discharge. B&B

alleged there that it did not receive notice of its client's bankruptcy case and had not yet filed a

motion to reopen the bankruptcy case so that it could file an objection to the dischargeability of

its debt.  In refusing to pay B&B, the SSA advised B&B that it required an order from the

bankruptcy court authorizing it do so.  Applying Second Circuit case law, the court held that the

SSA owed a non-discretionary statutory duty to pay B&B regardless of whether the debt survived

the discharge.  *See id.* at 239-240 (citing *Binder & Binder P.C. v. Barnhart*, 481 F.3d 141, 152

(2d Cir. 2007)); *see also Binder & Binder PC v. Barnhart*, 399 F.3d 128, 130–31 (2d Cir. 2005)

(holding that although 42 U.S.C. § 405(h) typically bars suits against the SSA brought under 28

U.S.C. § 1331, judicial review is available when there is no alternative since it may be presumed

"that Congress did not intend to foreclose all avenues of judicial review.").

     B&B cited *Astrue* in the present Motion.[7]  B&B had the same counsel in *Astrue* and

*Barnhart* as it has here, and apparently has had litigation experience against the SSA in

attempting to collect legal fees arising from disability claims.  Given that Debtor's discharge

appears to not create an impediment to B&B collecting its fees from the SSA, and given the

questionable basis for its embezzlement allegation, filing this Motion appears to serve no

legitimate purpose or have a proper basis.

---

[7] In *Astrue*, the district court considered the Second Circuit's 2007 decision in *Barnhart*, which it referred to as *Binder II*, and stated:

> Although *Binder II* is distinguishable from this case insofar as in that case the SSA was seeking to recoup money it had already paid to the plaintiff-representative from the claimant's past-due benefits award, that factor does not extinguish or otherwise alter the SSA's "unambiguous and limited duty" under 42 U.S.C. § 406(a) to certify a reasonable fee, withhold the amount of the certified fee from any past-due benefits award and pay that amount directly to the representative…. Accordingly, the fact that in this case the SSA has failed to perform its statutory duty to withhold the authorized legal fee from the past-due benefits award to Landwirth, and has already erroneously paid the entire amount of past-due benefits to Landwirth, does not excuse it from performing its additional unambiguous and nondiscretionary duty under the Social Security Act, 42 U.S.C. § 406(a), to pay the full amount of certified legal fees, i.e., eight thousand dollars ($8,000.00), directly to plaintiff.

*Astrue*, 848 F. Supp. at 242.

Therefore, this Court finds that B&B's conduct in bringing the Motion may have violated Bankruptcy Rule 9011 and/or may be sanctionable under this Court's inherent powers.  However, here, as Debtor has proceeded *pro se*, and as it appears Debtor is better served with this matter closed rather than remaining open for consideration of sanctions, this Court will not exercise its *sua sponte* powers.

### Conclusion

Based on the foregoing, it is hereby

**ORDERED**, that pursuant to 11 U.S.C. § 350(b) and Bankruptcy Rule 5010, B&B's Motion to reopen the case is denied; and it is further

**ORDERED**, that as the B&B debt has been discharged, B&B may not undertake any efforts to collect this debt from Debtor directly or indirectly, through recoupment or otherwise; however, notwithstanding the foregoing, nothing in this Order shall be construed as a prohibition against B&B exercising its rights against the Social Security Administration; and it further

**ORDERED**, that the Clerk of the Court shall serve notice of this Order upon Debtor, Debtor's counsel, B&B, and the Social Security Administration.

**Dated: August 28, 2014**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**

14